SONJA CRAIG, BY ARTHUR CRAIG, FATHER AND NATURAL GUARDIAN AND NEXT FRIEND, APPELLANT, V. GAGE COUNTY, NEBRASKA, APPELLEE.
SONJA CRAIG, BY ARTHUR CRAIG, FATHER AND NATURAL GUARDIAN AND NEXT FRIEND, APPELLANT, V. GAGE COUNTY, NEBRASKA, ET AL., APPELLEES.

208 N. W. 2d 82

Filed June 8, 1973. Nos. 38618, 38619.

Perry, Perry & Witthoff, for appellant.

Ronald Sutter, Dalke, Carlson & Thompson, Keith Howard, and Pilcher, Howard & Dustin, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

In a personal injury action the District Court awarded damages to Sonja Craig and against the County of Gage in the sum of $27,500. Sonja appeals. Her main assignments of error relate to type of review, adequacy of award, constitutionality of the Political Subdivision Tort Claims Act which prohibits trial by jury, and dis-

missal of a claim against an employee of Gage County.

Sonja, age 8, sustained the injury in a bicycle-truck collision at 2:30 p.m. on June 18, 1970, in Holmesville. At 4 p.m. she was admitted to a hospital in Lincoln for surgery by Dr. L. J. Gogela, a neurosurgeon.

On the left side of Sonja's head were swelling and a puncture wound over the temporal bridle area. Brain tissue extruded from the opening. A fracture extended two-thirds the length of the skull from the left frontal area to the bridle area. Three or four fragments of depressed bone had penetrated into the substance of the brain, and one may have entered three-fourths of an inch. The underlying dura was extensively torn.

As the depressed fragments were elevated, brain tissue extruded with blood. After removal of bone fragments and opening of the dura, Dr. Gogela aspirated brain tissue that the collision had torn and devitalized, removing several cubic centimeters. Precise measurement was impossible because of the tissue aspirated through the suction apparatus. Dr. Gogela also wired together several larger fragments of bone, sacrificing bone fragments in front to do so. In the skull area a sizeable pulsating defect, one by one and one-half inches in front, remained. The advisability of further surgery is in doubt, although a cranial defect is ordinarily covered to protect the brain from a penetrating wound and to conceal it.

The injury occurred in an area where part of the intellect lies. Although Dr. Gogela could view only the opening, he logically assumed that major injury to the visible area of the brain implied lesser injury to parts of the brain not visible to him. After closing the scalp, he applied a dressing. Duration of the surgery was one hour. Medical and hospital expenses incurred by Sonja's father totaled $3,194.25.

Upon dismissal from the hospital July 7, 1970, Sonja was unable to talk or to move without assistance, but her vital signs were good. She was subsequently seen

by Dr. Gogela on six occasions, the last visit occurring in November 1971. In a neurological examination on the latter date he noted permanent impairment of the right fields of vision with both eyes. Sonja, whom a speech therapist had treated until April 1971, still experienced some difficulty of expression, but improvement had been decidedly steady and should continue. Dr. Gogela did not attempt to evaluate her intellect, but he did not think that in most cases another part of the brain assumed the function of the damaged part.

Sonja, an average student, had completed the third grade prior to the injury. Prior to the trial in May 1972 she had been demoted to the third grade, but in the opinion of her teacher she was incapable of doing the work.

In March 1972, Professor David Levine, Chairman of the Department of Psychology at the University of Nebraska at Lincoln, tested the intelligence quotient of Sonja. On the nonlanguage test of the Wechsler Intelligence Scale for Children her score was somewhat below average. On the language test it was 57, a score lower than the scores of 99 per cent of the people tested. The results were subsequently corroborated by Sonja's scores on the following tests: Gray Standardized Oral Reading Paragraphs, California Achievement Tests, portions of the Stanford-Binet Intelligence Scale, the Peabody Picture Vocabulary Test, and parts of the Wechsler Pre-School and Primary Scale of Intelligence.

The scores of Sonja on the tests administered by Professor Levine accorded in his opinion with her medical history. Generally in right-handed people the left side of the brain controls language and the right side tends to control ability to deal with spatial relations.

According to Professor Levine, Sonja had possessed average ability prior to the injury, but afterwards she might fit into a classroom of educable students only with some difficulty. Her ability lay at the line that separated the educable and trainable student from the trainable

but noneducable student. Respecting language Sonja functioned at a moderately retarded level. Without the. language factor she functioned almost within average range in all but some instances.

Professor Levine was pessimistic about improvement of Sonja's language ability, distinguishing language from speech. He testified: ". . . (S)he will have difficulty in school continually and . . . will not be able to handle at any time high school level work." Without the injury she would have been capable of satisfactory work in some kind of college. Occupations requiring ability to perceive spatial relations will be suitable for her, but our society has limited them mostly to men.

The foregoing evidence and judgment are part of the record in case No. 38618, which was brought under the Political Subdivision Tort Claims Act. In case No. 38619 a petition containing the claim of Sonja against the truck operator, a county employee, as well as Gage County, was dismissed on motion and without a trial after judgment in case No. 38618.

We are told that our review ought to be de novo, the same as is our review of an equity case. See § 25-1925, R. R. S. 1943. Counsel cite City of Grand Island v. American Fed. of State, County, & Municipal Emp., 186 Neb. 711, 185 N. W. 2d 860 (1971); Satterfield v. Dunne, 180 Neb. 274, 142 N. W. 2d 345 (1966); Roberts Constr. Co. v. State, 172 Neb. 819, 111 N. W. 2d 767 (1961). In the first case the statute provided for the type of review counsel for Sonja seek. The opinion in the second case at best implied a statutory action in the nature of a suit in equity. In the third case this court reviewed an action at law in which counsel had waived a jury trial, saying: "Under such circumstances the findings of the trial court are equivalent to the verdict of a jury and will not be disturbed unless clearly wrong."

The Political Subdivision Tort Claims Act reads: ". . . (T)he procedures provided by this act shall be used to the exclusion of all others." § 23-2401, R. R. S. 1943.

". . . (R)ights of appeal in all suits . . . under this act shall be determined in the same manner. as if the suits involved private individuals . . . ." § 23-2406, R. R. S. 1943. The findings of a District Court under the act will not be disturbed on appeal unless they are clearly wrong. The award of damages to Sonja was below the minimum amount that the District Court could have awarded without committing reversible error.

The Political Subdivision Tort Claims Act expressly prohibits trial by jury. § 23-2406, R. R. S. 1943. Objection in the present cases to constitutionality of the act is for the first time raised on appeal. Attack upon the constitutionality of a statute cannot ordinarily originate on appeal from District Court. Rhodes v. Continental Ins. Co., 180 Neb. 10, 141 N. W. 2d 415 (1966), rehearing denied, 180 Neb. 794, 146 N. W. 2d 66 (1966); Clearwater Bank v. Kurkonski, 45 Neb. 1, 63 N. W. 133 (1895). The general rule controls, and we decline to review the objection.

Final judgment in a suit under the act constitutes a bar to any action by the claimant, by reason of the subject matter, against an employee of the political subdivision whose act or omission gave rise to the claim. The section is inapplicable if the court rules that the act does not permit the claim. § 23-2408, R. R. S. 1943. Dismissal of the petition against the employee of Gage County in light of our conclusions was correct.

The judgment in case No. 38619 is affirmed. The judgment in case No. 38618 is reversed and the cause remanded for a new trial on the single issue of the amount of damages that Sonja is to recover from Gage County. Costs on appeal are taxed to Gage County.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.